UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBIE KINSLEY**, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**PROGRESSIVE PALOVERDE INSURANCE COMPANY**,<br><br>Defendant. | CIVIL ACTION<br><br>NO.: 3:22-cv-00048-SDD-RLB<br><br>CLASS ACTION<br><br>JURY TRIAL DEMAND |

## AMENDED COMPLAINT FOR DAMAGES, PENALTIES, ATTORNEY FEES and EXPENSES

### Class Action Requested

The Petition of Robie Kinsley, an individual of full age of majority and resident of the Parish of East Baton Rouge, State of Louisiana, individually and on behalf of all others similarly situated, hereinafter referred to as Plaintiff or Mr. Kinsley, brings this suit as a class actual pursuant to Fed. R. Civ. P. 23(a) and (b)(3), against Defendant Progressive Paloverde Insurance Company ("Defendant" or "Progressive"), respectfully representing as follows:

1. Made Defendant in this cause of action is Progressive Paloverde Insurance Company an Indiana corporation with its principal place of business in Indianapolis, Indiana, and who may be served through its registered agent for service of process at 9339 Priority Way W Dr, Ste 200, Indianapolis, IN, 46240, USA.

2. Defendant is liable to Plaintiff and all others similarly situated for all elements of damages allowed by Louisiana law, whether past, present, and/or future damages, in an amount that is just and reasonable in the premises.

## JURISDICTION

3.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d), because (a) Plaintiff is a member of a putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars; and (c) none of the exceptions under §1332(d) apply to this claim.

4.  Plaintiff is a citizen of Louisiana, where he resides with the intent to stay indefinitely. Defendant is a foreign corporation licensed to do business and transact in insurance in Louisiana. Defendant is citizen of Ohio because it is incorporated in the State of Ohio and keeps its principal place of business in Mayfield, Ohio.

## VENUE

5.  Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district. Plaintiff is a citizen of the State of Louisiana, residing and domiciled in the Parish of East Baton Rouge.

## NATURE OF THE CASE

6.  Defendant is an automobile insurer in Louisiana and provides, *inter alia*, coverage for first-party property damage under collision and/or comprehensive coverage. Such policies, issued to Plaintiff and all putative Class Members, are form policies that promise to pay for loss up to a limit on liability of actual cash value ("ACV").

7.  Most car accidents are "partial" losses, which is the term used where insurers (including Defendant) pay to repair the damage to a vehicle. Where repair of the vehicle is impossible or uneconomical, however, the loss is considered a "total loss." When Defendant determines that a vehicle is a total loss it elects to pay the vehicle's ACV.

8. Total loss scenarios are taxing. Not only has the insured likely suffered more than a minor accident – and thus are often dealing with potential medical injuries – but there are numerous insurance-related issues, such as payment for storage, investigation of the vehicle and claim, finding a replacement vehicle, and so forth.

9. Louisiana law, in an attempt to minimize the uncertainty surrounding total loss situations, prescribed certain regulatory requirements that all insurers must follow when reimbursing insureds after their vehicle is determined a total loss.

10. Specifically, LSA-R.S. 22:1892B(5) governs the adjustment and claim payment for total-loss vehicles, *i.e.*, where insurers decline to repair a vehicle and choose to instead base its payment on the vehicle's actual cash value. The statute requires payment of "the actual cost to purchase a comparable vehicle" and prescribes three methods by which insurers can derive such cost. *Id*.

11. The options are: (1) A fair market value survey using qualified retail automobile dealers in the local market; (2) the "retail cost as determined from a generally recognized used motor vehicle industry source…"; or (3) an expert appraiser selected and agreed to by both the insurance company and the insured. LSA-R.S. 22:1892B(5)(a)-(c).

12. Unsurprisingly, given that Louisiana requires payment of the *actual* cost to purchase a comparable vehicle, at least two of the methods permitted – the fair market survey method and the industry source method – require use of the retail cost of the vehicle. This requirement prevents insurers from artificially devaluing totaled vehicles by using unreliable Craigslist postings from private sellers, or suspect price listings from "buy-here-pay-here" type car sellers. Instead, Louisiana requires use of "qualified retail" car dealers and "recognized used motor vehicle industry sources" to determine the "retail cost" of comparable vehicles.

13. Defendant, however, fails entirely to abide by such requirements, and, in so doing, breaches its contract with its insureds in bad faith and violates numerous Louisiana regulatory requirements.

14. In a blatant and unlawful effort to reduce its total-loss payments to insureds, Defendant, through its vendor, after the retail market value is determined, applies a deceptive and capricious "projected sold adjustment," in order to artificially lower the market value of the comparable vehicles and, thus, pay the Plaintiff an amount that is lower than required, in violation of the Policy and Louisiana law.

15. Specifically, Defendant purports to calculate the value of total-loss vehicles via a third-party vendor, Mitchell, through a system called the Mitchell Vehicle Valuation Report ("Mitchell"). The Mitchell system identifies the list price of comparable vehicles sold or listed for sale online. Mitchell then, at Defendant's directive, applies a deceptive and arbitrary "projected sold adjustment," which artificially reduces that "market value" of the comparable vehicles.

16. Upon information and belief, Defendant's "projected sold adjustment" is a blanket percentage reduction of the selling price of a comparable vehicle based on the listing price. Rather than basing their adjustment on any tangible features of the available vehicle which may relate to consumer negotiations, the "projected sold adjustment" is arbitrarily applied as a universal percentage reduction to any vehicle in a given price range. For example, and by way of illustration only, if a car is listed for sale at $10,000, the vehicle could be reduced by 7%. Now if an identical vehicle of the same make, model year and trim is listed at $15,000, the vehicle might be reduced by 10%, regardless of the fact that both vehicles shared the same make, model, year, and features. There is no rational explanation for why the two identical vehicles would be subject to such varied reductions in their selling price.

17. Defendant's "projected sold adjustment" is arbitrary and unsupportable. Without providing support or data, Defendant represents that the "projected sold adjustment" reflects some sort of average difference between a dealer list price and "what the dealer would be willing" to sell it for. *See* Ex. B (Market Valuation Report) at 11 ("Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)."). However, an across-the-board 7-8% reduction on used vehicles' internet prices is not typical and does not reflect market realities, and neither Louisiana Law nor the Policy permit Defendant to make this arbitrary deduction.

18. Indeed, Defendant applies the "projected sold adjustment" without contacting the identified dealerships or considering whether the online retailer ever discounts its vehicles. Notably, in applying an across-the-board, percentage-based "projected sold adjustment" reduction, Defendant failed to consider that most used car dealerships banned price negotiation by implementing "no haggle" pricing[1] or that (as discovery will show), given certain market forces, even the few car dealers that might negotiate prices listed in-person on car lots do not negotiate the price listed online.

19. By applying an arbitrary and unsupported "projected sold adjustment" to every comparable vehicle, Defendant fails to provide documentation to ensure statistically valid local market area values in clear violation of LSA-R.S. 22:1892B(5)(a)-(c).

20. Certainly, the arbitrary, capricious, and meretriciously labeled "projected sold adjustment" reduction cannot be a reflection of market realities given that, even accepting Defendant and its vendor's assertions at face value, it is based on national data, not market data.

---

[1] *See* https://www.carmax.com/about-carmax (last visited July 22, 2021) ("our 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

21. Plaintiff does not contest Defendant's representations of the listed price of comparable vehicles. Plaintiff does not contest the value assigned to differences in trim, condition, mileage, packages, and equipment between comparable vehicles and the total-loss vehicle. Plaintiff solely contests that Defendant instructed Mitchell to apply an arbitrary, capricious, and invalid "projected sold adjustment" across-the-board.

22. Notably, and for reasons unknown, Defendant does not instruct Mitchell to apply a "projected sold adjustment" to comparable vehicles in all states in which it operates. Many other insurers who use Mitchell do not instruct Mitchell to apply "projected sold adjustments" to comparable vehicles.

## PLAINTIFF'S ACCIDENT AND VALUATION

23. At all times relevant, Plaintiff was insured under a policy of insurance issued by Defendant for a 2014 Chevrolet Cruze. *See* Exh. A (Policy).

24. On or about May 8, 2019, Plaintiff's vehicle sustained damage. After Plaintiff submitted a physical damage claim, Defendant declined to pay to repair the vehicle and elected to determine it was a total-loss.

25. Defendant, through the Mitchell system, purportedly determined that the market vehicle value was $7,325.11, to which Defendant subtracted the deductible for a total of $6,485.11. *See* Exh. B (Market Valuation Report) at 1.

26. The market valuation report listed values of ten different comparable vehicles and shows that Defendant and its vendor applied a "projected sold adjustment" of approximately 7-8% to three of the four comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See id.* at 6-10.

**DEFENDANT DOES NOT ABIDE BY LSA-R.S. 22:1892B(5)(b)**

27. The Mitchell system used by Defendant is also not a "generally recognized used *motor vehicle* industry source" within the meaning of § 22:1892B(5)(b). The Mitchell system is marketed solely to insurance companies, and is used by insurance companies, such as Defendant, to artificially and illegitimately deflate the value of total-loss vehicle in making total-loss claim payments.

28. The difference between a "motor vehicle industry source", designed to reflect an *accurate* vehicle value, and an insurance industry source, designed to find an artificially-low value favorable to insurance companies, is seen in Plaintiff's case, where an actual "motor vehicle industry source" identified the value of Plaintiff's vehicle as approximately $3,000.00 higher than did Defendant.

**DEFENDANT'S CONDUCT BREACHES ITS CONTRACTS AND VIOLATES LOUISIANA LAW**

29. Defendant is aware that the Mitchell valuation system results in unlawfully low vehicle valuations, and that, were Defendant to use a method prescribed by Louisiana law, the amounts paid to total-loss insureds would be significantly higher.

30. Because actual motor vehicle industry players and sources are aware of and accurately reflect the used vehicle market – which are then used by others in the industry, including car dealers, and relied upon by consumers – it is virtually impossible for a system designed to provide an artificially *lower* amount to indemnify insureds for their loss.

31. Defendant is aware that motor vehicle industry sources provide higher – and more accurate – vehicle values than Mitchell.

32. The arbitrary and capricious vehicle values provided by Mitchell is lower than "the actual cost to purchase" a vehicle of like kind and quality, and concomitantly lower than the

vehicle's fair market retail cost. Moreover, it is lower than the vehicle's ACV, as reasonably understood under the Policy and as conformed to Louisiana law.

33. Defendant's failure to properly pay the actual cash value of an insured's loss constitutes a breach of contract. Defendant's use of a system that intentionally devalues total-loss vehicles constitutes a breach of contract.

34. Defendant breaches its contracts with insureds by refusing to utilize a legitimate method prescribed by LSA-R.S. 22:1892B(5), thereby refusing to pay the recognized "actual cost to purchase" or market retail cost as required by Louisiana law and its own Policy.

35. Moreover, the aforementioned conduct – and breaches of contract – are the result of actions that constitute bad faith, and are capricious and arbitrary in violation of Defendant's duties and obligations to its insureds.

36. As set forth above, Defendant violates LSA-R.S. 22:1892 because it does not utilize a recognized motor vehicle industry source. And even if Defendant did, its system is designed not to pay the "actual cost to purchase" or market retail cost for the total-loss vehicle.

37. Defendant's conduct set forth herein and use of the Mitchell system constitutes violations of La. R.S. §22:1973A in that Defendant violates its "duty of good faith and fair dealing" by failing to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with its insureds.

38. Upon information and belief, Defendant intentionally undervalues the total-loss claims, about which it knowingly and intentionally misinforms and misleads insureds concerning the Mitchell system, including the utilizations of adjustments, and otherwise violates its duty of good faith and fair dealing and Louisiana law.

39. Defendant's conduct set forth herein and use of the Mitchell system constitutes violations of La. R.S. § 22: 1973B(5) in that Defendant fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss" and such failure is "arbitrary, capricious, or without probable cause."

40. Defendant's Policy, to the extent inconsistent, is conformed to comply with Louisiana law.

## CLASS ACTION

41. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff seeks to certify and represent the following Class:

> All Louisiana citizens insured by Defendant who, from the earliest allowable time through the date of a class certification order, received a first-party total loss valuation and payment on an automobile total loss claim that included a "projected sold adjustment" or similar adjustment.

42. Excluded from the Class are Defendant and its agents, employees, subsidiaries, parents, and related entities, as well as the Judge assigned to this case and his staff employees. Also excluded from the Class are the undersigned counsel and anyone employed in their law firms.

43. **Numerosity:** Although unable to allege a precise number of Class Members absent confirmatory discovery, upon information and belief, including investigation by the undersigned and examination of the premiums written by Defendant over the past ten years, Plaintiff believes that the number of members of the Class numbers in the thousands and perhaps tens of thousands, such that members of the Class are so numerous that joinder of all individual claims at issue is impracticable. Thus, the Class is sufficiently numerous within the meaning of Rule 23(a)(1).

44. **Commonality:** This litigation raises common questions of law and fact subject to common resolution within the meaning of Rule 23(a)(2), including:

a. whether Defendant's practice of applying a "projected sold adjustment" when determining the market value of Class members' vehicles, and its failure to disclose same would deceive a reasonable consumer;

b. whether Defendant's practice of applying a "projected sold adjustment" when determining the market value of Class members' vehicles would be considered material by a reasonable consumer;

c. whether Defendant's conduct breached its contracts with Plaintiff and the other Class members;

d. whether Defendant's conduct breached the covenant of good faith and fair dealing with Plaintiff and the other Class members;

e. whether Defendant's practice of applying a "projected sold adjustment" violates LSA-R.S. 22:1793 and/or LSA-R.S. 22:1892.

f. whether Plaintiff and the Class are entitled to injunctive relief; and

g. whether Plaintiff and the Class are entitled to damages and the measure of damages owed to them.

45. **Typicality:** Plaintiff's claims and the defenses thereto are typical of members of the Class within the meaning of Rule 23(a)(3). Defendant injured Plaintiff and members of the Class through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all Class Members and Plaintiff's interests are identical to those of the other Class Members.

46. **Adequacy:** Plaintiff will adequately – and zealously – protect the interests of members of the Class. Plaintiff is unaware of any interest in conflict with those of the Class, and Plaintiff and the undersigned have sufficient and adequate resources to prosecute this claim.

Plaintiff is sufficiently knowledgeable concerning the subject matter at issue and is committed to protecting putative class members from any unfair or harmful conduct. Moreover, Plaintiff has retained the undersigned as counsel, who, collectively, have successfully litigated hundreds of class actions, many of which in the insurance context, through settlement and litigated judgments. Included in the undersigned are Louisiana counsel who not only have significant experience in class litigation, but are well-versed in the idiosyncrasies and particularities of Louisiana law and local rules and procedures. As such, the adequacy requirement of Rule 23(a)(4) is satisfied.

47. **Superiority:** Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 23(b)(3), in that:

   a. Neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this Class as a class action;

   b. The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and would create a significant and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

   c. Because of the disparity of resources available to Defendant versus those available to individual members of the Class, prosecution of separate actions would work a financial hardship;

   d. The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all due process requirements. A class action is also superior to the maintenance of these

  claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

  e. Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

48. Class members can be identified and ascertained through objective criteria within Defendant's own possession.

## COUNT I: BREACH OF CONTRACT

49. Paragraphs 1-48 are hereby incorporated by reference.

50. This Count is brought by Plaintiff individually and on behalf of the Class.

51. Plaintiff and all members of the putative Class paid all premiums and otherwise satisfied all conditions precedent, as evidenced by, *inter alia*, the fact that Defendant determined the claims were covered claims.

52. Given the duties and obligations imposed by the terms and conditions of the form insurance contract, interpreted in light of and (if necessary) conformed to Louisiana law, Defendant's use of the Mitchell valuation system constituted a breach of contract.

53. Defendant also breached its contracts with Plaintiff and the members of the Class by applying these "projected sold adjustments" and thus failing to pay Plaintiff and each of the other Class members the promised ACV of their total loss vehicles.

54. Moreover, the conduct set forth herein was knowingly capricious and illegitimate, and otherwise constituted bad faith.

55. Plaintiff and putative members of the Class were damaged by Defendant's breaches of contract in amounts that will be demonstrated according to proof.

56. Plaintiff and putative members of the Class are entitled to compensatory damages, penalties, costs, attorneys' fees, and all other relief allowable by law and/or that this Court deems just and proper.

## COUNT II: VIOLATIONS OF LSA-R.S. 22:1793

57. Paragraphs 1-48 are hereby incorporated by reference.

58. This Count is brought by Plaintiff individually and on behalf of the Class.

59. As set forth herein, Defendant knowingly and/or intentionally undervalued total-loss vehicle property damage claims. Defendant did so notwithstanding its knowledge that use of legitimate used motor vehicle sources would have resulted in an accurate and fair valuation for its insureds.

60. The conduct set forth herein violated Defendant's duties of good faith and the requirements prescribed by Louisiana law.

61. Defendant's utilization of the Mitchell valuation system violated LSA-R.S. 22:1892.

62. As to Plaintiff and members of the putative Class, Defendant failed to fairly and promptly adjust claims and failed to make a reasonable efforts to settle claims with its insureds, which constitutes a violation of its good faith duties.

63. Similarly, Defendant failed to pay the amount of claims due its insureds within the statutorily-prescribed time of sixty days. Moreover, such failure, as outlined herein, was "arbitrary, capricious, or without probable cause."

64. As such, Plaintiff and members of the Class are entitled to all damages, penalties, attorney fees, costs, and relief permitted by law and deemed by this Court to be just and proper.

## COUNT III: PENALTIES AND EXPENSES OF LITIGATION

65. Paragraphs 1-64 are hereby incorporated by reference.

66. This Count is brought by Plaintiff individually and on behalf of the Class.

67. Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff and Class Members unnecessary trouble and expense by failing to comply with the clear requirements of its policies and Louisiana law.

68. Plaintiff and Class Members are entitled to, and expressly pray for, expenses of litigation, all allowable penalties, and all attorneys' fees and costs pursuant to La. R.S. §22:1892(B)(1), including 50% of damages found or $1,000.00.

## COUNT IV: VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING

69. Paragraphs 1-64 are hereby incorporated by reference.

70. This Count is brought by Plaintiff individually and on behalf of the Class.

71. Defendant's practice of applying "projected sold adjustments" is capricious, illegitimate, and in violation of its obligation, contractually and under La. R.S. 22:1973, to abide by its duty of good faith and fair dealing.

72. To the extent that Defendant has any discretion in how to order adjustments, that Defendant always exercises such discretion to its own advantage and to its insureds' disadvantage is a violation of its duty of good faith and fair dealing.

73. As a result, Plaintiff and members of the putative Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of the Class of other persons similarly situated, prays that, after due proceedings had, there by judgment rendered herein in favor of Plaintiff and the Class, and against Defendant Progressive Paloverde Insurance Company as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff serving as representative of the Class and with the undersigned serving as Class Counsel;

b) For notice to be sent to the Class in a form and manner that comports with due process and is approved by the Court;

c) For an award of compensatory damages in amounts owed pursuant to the policies of insurance and Louisiana law;

d) For all penalties, expenses, and relief allowable by law;

e) For all other damages according to proof;

f) For an award of attorneys' fees and expenses pursuant to La. R.S. §22:1892(B)(1) and/or La. R.S. §22:1973 or other applicable law;

g) For costs of suit incurred herein;

h) For pre-judgment and post-judgment interests on any amounts awarded; and

i) For such other general and/or equitable relief to which the Plaintiff and/or the Class may be entitled that this Court deems just and proper.

This 23rd day of February, 2022.

                Respectfully submitted,

                */s/ Amy Judkins*
                **Amy L. Judkins** *(Pro Hac Vice)*
                Florida Bar No.: 125046
                **NORMAND PLLC**
                3165 McCrory Place, Ste. 175
                Orlando, FL 32803
                Tel: 407-603-6031
                E-Mail: amy.judkins@normandpllc.com
                E-Mail: ean@normandpllc.com

                **Stephen J. Herman**, La. Bar No. 23129
                **Soren E. Gisleson**, La. Bar No. 26302
                **John S. Creevy**, La. Bar No. 30879
                **Charles M. King**, La. Bar No. 34621
                **HERMAN HERMAN & KATZ, LLC**
                820 O'Keefe Avenue
                New Orleans, Louisiana 70113
                Telephone: (504) 581-4892
                Fax No. (504) 561-6024
                E-Mail: sherman@hhklawfirm.com
                E-Mail: sgisleson@hhklawfirm.com
                E-Mail: jcreevy@hhklawfirm.com
                E-Mail: cking@hhklawfirm.com

                ***Attorneys for Plaintiff Robie Kinsley***